IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 21-CR-4002-01-SRB |
| | ) | |
| JOSEPH LYNN CLARK, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

# ORDER

Pending before the Court for consideration is Defendant Joseph Lynn Clark's Emergency Motion to Reconsider Detention Order that was filed on March 14, 2021. (Doc. 18). In accordance with the Court's order expediting briefing (Doc. 19), the United States filed its suggestions in opposition (Doc. 23) on March 17, 2021. A hearing was conducted on March 18, 2021, via video teleconference with the consent of the parties. The matter is now ripe for consideration. For the reasons that follow, Defendant's motion is DENIED.

## I. Background

On January 26, 2021, the Defendant was charged by Complaint with transportation of child pornography in violation of 18 U.S.C. §§ 2252(a)(1) and (b)(1). (Doc. 1). An initial appearance was held on January 27, 2021, followed by a preliminary hearing and detention hearing on February 1, 2021. (Docs. 6, 10). After the hearings, an order of detention was entered in which the Court found a rebuttable presumption for detention, insufficient evidence to rebut the presumption, and "by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community." (Doc. 11).

The Defendant was charged by Indictment with transportation of child pornography, in violation of 18 U.S.C. §§ 2252(a)(1) and (b)(1), on February 25, 2021. (Doc. 13). On or about March 6, 2021, the Defendant, "feeling unwell" and "sweating profusely," was transported from the Cole County Jail to a local hospital where he tested positive for COVID-19. (Doc. 18). One week later, the Defendant filed an Emergency Motion to Reconsider Detention Order.

## II. Discussion

**A. Defendant's Health Concerns Do Not Outweigh Danger Posed to the Community**

A brief summary of the law applicable to Defendant's motion is as follows. Defendant's motion is analyzed under 18 U.S.C. §§ 3142(f) and 3142(i). Section 3142(f) permits a court to reopen a detention hearing and consider information "not known to the movant at the time of the hearing and that has a material bearing on the issue [of] whether there are conditions of release that will reasonably assure the appearance of [defendant] as required and the safety of any other person and the community." An analysis under section 3142(f) "focuses on whether the court can fashion conditions of release that will reasonably assure the defendant is not a risk of nonappearance or a risk of harm to any others or the community." *United States v. Bowers*, No. 19-00143-01-CR-W-BP, 2020 WL 5520567, at *1 (W.D. Mo. Sept. 14, 2020) (quoting *United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020)). Thus, to reopen the issue of pretrial detention under section 3142(f), the Defendant must demonstrate how his recent COVID-19 diagnosis would reduce the risk that he poses to the community. *Bowers* 2020 WL 5520567, at *1. "The risk of harm *to the defendant* does not usually bear on this analysis." *Id*. (quoting *Clark*, 2020 WL 1446895, at *3 (emphasis in original) (quotation marks excluded)).

Defendant argues that the Court should reconsider its February 1, 2021 detention order for several reasons. (*See generally* Doc. 18). He testified that he has received inadequate medical care

while detained in the Cole County Jail and is suffering greatly from COVID-19. He reported that jail staff checks on him once a day. Despite medical records over the last week showing his oxygen saturation levels at 98%, Defendant contends that due to pre-existing lung problems his maximum level over the last 18 months has been 95% or lower. He testified that in addition to fighting COVID-19, he requires medical attention for sarcoidosis, chronic obstructive pulmonary disease, and emphysema. If released on bond, the Defendant "intends to admit himself immediately to the hospital for treatment and monitoring of his oxygen levels, his COVID symptoms, and his lung condition." *Id*. at 5. Once released from the hospital, Defendant proposes that he "be constrained by GPS monitoring to a location that does not have electronic access to the internet." *Id*. at 6. Defendant maintains that because of his COVID-19 diagnosis there has been a change in circumstances which, pursuant to 18 U.S.C. § 3142(g)(3)(A) and 18 U.S.C. § 3142(f)(2)(B), mandate a modification of the Court's February 1, 2021 detention order.

The Government disagrees. Even though it is requesting the Court deny Defendant's motion, the Government contends that it is sensitive to the issues the Defendant raises related to the coronavirus pandemic. (Doc. 23 at 2). Conceding the Defendant "has identified CDC medical risk factors affecting the likelihood of severe outcomes from COVID-19," the Government argues "the factors outlined in 18 U.S.C. § 3142(g) whether the defendant remains a danger to the community, which are not affected by COVID-19, do not allow the Court to grant the defendant's motion for compassionate release." *Id*. Furthermore, the Government states

> Evidence of the defendant's diagnosis of sarcoidosis, chronic obstructive pulmonary disease (COPD), and emphysema were before the Court at the time of the hearing (D.E. 9 at 3.) Despite the defendant's pre-existing medical conditions amid a global pandemic, the Court still found he was a danger to the community and, "that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community" (D.E. 11.) The factors supporting the court's decision listed in the detention order remain unchanged by the fact the defendant has been diagnosed with COVID-19. In fact, the defendant's

diagnosis accentuates his danger to the community and places into doubt whether the defendant will receive any medical care. The release of a COVID-19 positive defendant into the community creates an additional risk to the public, both through risk of infection and, specifically in this case, the Probation and Parole Office's inability to facilitate electronic monitoring or have a probation officer visit the defendant's home to ensure compliance (D.E. 21 at 1.)

*Id*. The Pretrial Services Officer advises:

> It is important to note that if the defendant were released from custody, while testing positive for COVID-19, the probation office would not be able to facilitate electronic monitoring or have a probation officer visit the defendant's home to ensure compliance with the defendant's bond conditions due to the risk it would present to the probation and pretrial services officer. However, the Adam Walsh Act requires the Court to impose a condition of electronic monitoring; therefore, the pretrial services officer would be unable to mitigate this risk factor in order to comply with statute.

(Doc. 21). The Defendant would be unable to comply with statutory regulations if released from custody and would have no oversight in the community. (Doc. 20). Any continued evaluation of his risk would be based solely on self-reported information. *Id*. The Court notes that at the time of his arrest, the Defendant was not in compliance with his sex offender registration requirements, which relies on self-reported information.

So the issue before the Court is whether there is a change in circumstances which would negate the Defendant's danger to the community. Section 3142(e) instructs that a judicial officer shall order detention of a defendant before trial if the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person and the safety of the community. Judges shall consider several factors in making this determination, including: the nature and circumstances of the offense charged; the weight of the evidence against the defendant; the history and characteristics of the defendant; and the nature and seriousness of the danger to the community that the defendant's release would pose. 18 U.S.C. § 3142(g). There is a rebuttable presumption that this standard is met in this case because the Defendant is charged with an offense

described in 18 U.S.C. § 3142(e)(3)(E) and that offense involves a minor victim under 18 U.S.C. §§ 2252(a)(1) and (b)(1).

There are several factors that a court must consider before ordering the detention of a defendant such as the history and characteristics of the defendant which includes the defendant's "physical and mental condition." 18 U.S.C. § 3142(g)(3)(A). With respect to this factor, the Court recognizes that COVID-19 has created a global pandemic which poses significant health risks to every individual. Further, the Court acknowledges this Defendant's pre-existing medical conditions which could lead to severe illness or death from his having COVID-19. The Defendant's pre-existing medical conditions, coupled with the COVID-19 diagnosis, are factors the Court must consider under 18 U.S.C. § 3142(g)(3)(A). The virus creates a generalized risk, which the Court recognizes, as well as particularized risks to various cohorts, such as the elderly and those who have pre-existing medical conditions. The specific impact of Defendant's COVID-19 diagnosis must be weighed with the other factors set forth by the law. In a close case, confinement during a pandemic and diagnosed illness may militates against detention. In other cases, particularly those involving danger to the community, a health risk and health challenge to the defendant by virtue of confinement may not outweigh the risk of harm to others.

The Court determined in its February 1, 2021 detention order that certain factors weighed against Defendant's release given that Defendant failed to rebut the presumption for detention that arises from the charged conduct in this case. (Doc. 11). Defendant has been indicted for possessing close to 100 virtual child pornography images and images of minors engaged in explicit sexual conduct, in violation of 18 U.S.C. §§ 2252(a)(1) and (b)(1). *Id*. The Defendant is a registered sex offender, having previously been convicted of possession of child pornography in 2011. *Id*. The Defendant failed to take full responsibility for the conduct leading to his 2011

conviction, asserting that his daughter was responsible for downloading some of the pornography and that he downloaded images of torture as part of his professional activities. *Id*. And the Defendant did not report the email account associated with the current charges, in violation of sex offender registration requirements. *Id*. Accordingly, the health concerns discussed herein do not outweigh the danger to the community that would result from Defendant's release. His motion is denied.

### B. Defendant is Receiving Routine and Emergency Medical Care

Deputy U.S. Marshal Michael Cavener testified at the hearing held on March 18, 2021. He stated that questions regarding the level of care the Defendant receives at Cole County Jail did not arise until his recent COVID-19 diagnosis. He noted that the Cole County Jail medical staff is aware of the Defendant's underlying medical issues and observe and evaluate him daily. He said that as soon as Defendant began displaying symptoms related to COVID-19, he was transported to the emergency room at Capital Region Medical Center in Jefferson City, Missouri. While at Capital Region, the Defendant was diagnosed with COVID-19. However, he was not admitted to the hospital and, instead, sent back to the Cole County Jail with various COVID medications. Deputy Cavener testified that since Defendant's COVID-19 diagnosis, the Cole County Jail medical staff has continued to monitor him daily and has kept the U.S. Marshal's Service apprised of his condition. In fact, during a recent email exchange between a Cole County Jail nurse and Deputy Cavener, the nurse wrote:

> I had Dr Kessler check him out and he is doing well. O2 levels 93 to 96%. [One] time sleeping this morning it was 90% and came up when he woke up. Dr said his lungs sounded good for lung problem. He voiced no complaints to him.

Deputy Cavener's email correspondence dated March 11, 2021. Additionally, in light of concerns raised by Defendant's counsel in recent days, and at the request of the Government, Deputy

Cavener has asked the Cole County Jail nurse to check on Defendant more frequently throughout the day. Deputy Cavener reported that he is confident if Defendant's condition were to deteriorate, Cole County Jail would take necessary action to include a return trip to the emergency room.

Dr. Howard Keesler, a board certified emergency room physician with 25 years of practice post-residency, testified regarding the care Defendant has received while in custody. Dr. Keesler stated that while the Defendant has been under his care at the Cole County Jail, Defendant's oxygen levels have fluctuated between 90% and 98%. The jail staff, he said, has been instructed to return the Defendant to the emergency room if his oxygen level dips below 90%. Dr. Keesler stated that Defendant is receiving the medical care and medication needed and required. He stated Defendant is being treated as well or better than area Cole County residents. He testified that the Defendant is the only known individual at Cole County Jail to test positive for COVID-19. He stated there may have been one other coronavirus case at the facility since the pandemic began.

Based on the testimony of both Deputy Cavener and Dr. Keesler, the Court finds that the Government has not exhibited deliberate indifference to a serious medical need, as Defendant has received adequate treatment for COVID-19 and his pre-existing medical conditions.

### III. Conclusion

As stated above, the Court has considered the COVID-19 diagnosis on Defendant's detention and has weighed those considerations against the factors enumerated in 18 U.S.C. § 3142(g). Consequently, the Court concludes that, although COVID-19 coupled with Defendant's pre-existing medical conditions increase Defendant's risk of severe illness, he still poses a risk to the public that requires his continued detention. No new mitigating factors were introduced at the hearing. Furthermore, the Court is satisfied that Defendant has access to routine and emergency medical treatment while in custody. For these reasons, Defendant's Emergency Motion to Reconsider Detention Order is DENIED.

It is ORDERED that the Defendant continue to be detained pending the disposition of this case as there is no condition or combination of conditions that may reasonably assure the safety of the community.

Dated this 18th day of March, 2021, at Jefferson City, Missouri.

Willie J. Epps, Jr.
United States Magistrate Judge